321 So.2d 311 (1975)
GULF INSURANCE COMPANY
v.
Bob PROVINE, Jr.
No. 48398.
Supreme Court of Mississippi.
November 3, 1975.
Rehearing Denied December 22, 1975.
*312 Heidelberg, Woodliff & Franks, Robert T. Gordon, Jr., W. Swan Yerger, Jackson, for appellant.
Fraiser & Burgoon, Greenwood, for appellee.
Before RODGERS, PATTERSON and SUGG, JJ.
RODGERS, Presiding Justice.
The appellee, Bob Provine, Jr., brought suit in the Circuit Court of Leflore County, Mississippi, against the appellant Gulf Insurance Company, a non-resident insurance company doing business in Mississippi, upon a policy of insurance issued to the appellee insuring him against loss or damage to a certain 1973 model Cessna 8 AG Wagon aircraft owned by appellee.
The aircraft was damaged in a sudden ground crash while being flown to fertilize a farm. The owner, Bob Provine, Jr., contended that the aircraft was totally destroyed and could not be safely repaired. The insurance company denied that the aircraft was damaged beyond repair and offered testimony to show that the cost of repair would amount to much less than the full value of the aircraft as set out in the policy.
The jury returned a verdict in favor of the aircraft owner for the full amount of the liability set out in the insurance policy. The appellant Gulf Insurance Company has appealed to this Court and now contends that the trial court committed a reversible error in permitting the expert witnesses for the appellee to testify that, in their opinion, certain tubular framework of the aircraft was bent because the skin covering of the aircraft was wrinkled, when the fact could have been ascertained by a removal of the engine and cockpit covering; that in fact the covering was removed and the tubular frame was not bent. It is, therefore, argued that the testimony offered by the plaintiff should have been excluded and a directed verdict entered in favor of the insurance company.
We have examined the record, testimony, the many photographs and the authorities *313 cited by appellant and appellee, and have reached the conclusion that the expert testimony offered by appellee, Provine, was admissible in evidence before the jury. One of the expert witnesses for the defendant admitted that there were wrinkles in the skin of the aircraft. The appellee testified that this witness told him that when certain pressure was removed that the situation would adjust itself by "snapping back into place."
The expert witnesses disagreed as to whether or not the door to the aircraft would fit after the accident. They disagreed about the meaning of the wrinkles on the skin of the aircraft, and they disagreed as to whether or not the nose cowling was jammed against the baggage section so that when removed it popped out.
One of the plaintiff's witnesses, Mr. Stewart Kimmel, a Federal Aviation Administration licensee who had many years of experience as an aircraft mechanic, testified that he examined the wrecked aircraft here involved the next day after the accident in company with one John Ritz, the aviation maintenance and service specialist for Cessna Manufacturing Company. He testified that the doors to the aircraft were sprung, and "would not properly fit," that on the right-hand side of the plane where the injured wing had "jammed into the ground or bank," the wing had hit the cabin structure and "wrinkled the skin on the right-hand side." He said, "Well, anytime you have wrinkling of skin, you have got internal structure damage  this is one thing that a pilot is always taught and everything to look for ." He said that "the nose cowling was jammed back against the hopper section or the baggage section." He said that they removed the cowling to inspect the engine and when they did, "it popped out" under quite a bit of pressure. He testified that from the examination he reached the conclusion that the framework or "tubular structure" of the aircraft was damaged, that it would cost from eleven thousand dollars ($11,000.00) to thirteen thousand dollars ($13,000.00) to repair the items mentioned, and that it would cost an additional twelve thousand dollars ($12,000.00) to put the aircraft in a jig to straighten the bent body or tubular structure. He said the aircraft was a total loss.
On cross-examination, this witness admitted that the sides to the body structure were not removed by him to observe the tubular body structure. He said, however, that one could not know whether the tubing was bent unless it was put in a jig, and on reflection, he thought he did remove the right-hand panel but was not positive. He would not assume that there was no damage to the body structure of the aircraft.
The defendant objected to this testimony and requested the trial judge to grant a directed verdict because he argued that there was no direct testimony that the tubular structure of the aircraft was damaged. The trial court overruled the objection and the motion.

I.
We have detailed the foregoing evidence because the defendant contends that the opinion of the witness was not based on a proper foundation of fact; that before this testimony was available it was essential that the witness's testimony should afford a reasonably accurate factual basis for his conclusion; and that in the instant case, the testimony does not show that the body or tubular structure was in fact bent, that this could have been established as a fact by simply removing the panels on the sides of the aircraft.
The appellant cites Boston Insurance Co. v. Wade, 203 Miss. 469, 35 So.2d 523 (1948), as authority for this conclusion. In that case, there was evidence that the truck involved was badly damaged. The visible damage would amount to one thousand forty-seven dollars and forty cents ($1,047.40). The witness said, however, "but that injury might, and probably would show up thereafter not ascertainable without *314 taking the truck to pieces." 203 Miss. at 473, 35 So.2d at 523. In that case the Court simply held that this testimony was speculative and the Court should have limited the recovery to cost of repairs.
The Wade case is not applicable on this point, because the witness in the instant case testified that the aircraft structure was bent, based upon the fact that the skin was wrinkled. He gave his reasons for his conclusion, and he also testified that the only way to determine whether or not the tubular structure was damaged was to put it in a jig, and he was of the opinion that there was no jig for this particular aircraft design. Generally, the question as to whether or not the opinion of an expert is based on, and supported by, sufficient facts or evidence to sustain it, is a question of law for the court. 32 C.J.S. Evidence § 546(63), at 266 (1964).
It has been said that absolute certainty is not required of an expert witness. It is only necessary that the facts on which an expert relies for his opinion should afford a reasonably accurate basis for his conclusion. It is not necessary that the testimony of an expert witness be capable of demonstration, it is sufficient if his testimony is probably true rather than possibly true, or simple guesswork or conjecture. 32 C.J.S. Evidence § 546(64), at 270 (1964).
Moreover, the qualification of an expert witness to give an opinion as to the value of the damages to the aircraft was largely within the sound judicial discretion of the trial judge. St. Louis Fire and Marine Co. v. Lewis, 230 So.2d 580 (Miss. 1970).
A medical heart specialist is not required to operate on a patient before he can testify that in his opinion the patient died of congestive heart failure, and this is true, although a pathologist may later perform an autopsy and testify that the patient died as the result of a cerebral hemorrhage caused by trauma.
The objection of the defendant goes to the weight of the evidence rather than to its admissibility. We hold that the testimony of the witness Kimmel was admissible in evidence.

II.
Having said that, however, we now are confronted with a more serious issue, that is to say, even if this testimony were admissible, was it  coupled with the testimony of the owner of the aircraft  sufficient to present a jury question as to whether or not the aircraft was damaged beyond repair.
The defendant insurance company offered two expert aircraft mechanics, Mr. Bert A. Welch and Mr. Charles Edmond Iliff, who testified that they took the sides off the aircraft and that the tubular structure, or framework of the aircraft, was not bent. Welch examined the tubular structure visually, and Iliff examined it with a straight edge. They pointed out that the engine and cockpit of the aircraft were not damaged. Small pictures of each segment of the aircraft were introduced.
They testified that the aircraft could be repaired so that it would be in as good a condition as it was originally. Mr. Welch testified that the aircraft could be repaired for fourteen thousand dollars ($14,000.00). Mr. Iliff testified that he would repair the aircraft for nine thousand nine hundred eighty-six dollars and thirty-two cents ($9,986.32). Both witnesses testified that the frame or tubing was not bent and that all parts of the craft could be purchased, and the damaged wing and tail section could be replaced.
The question then is whether or not the testimony of the defendant's expert witness was merely contradictory of plaintiff's expert witnesses, or was it of such a nature *315 as to become conclusive in the absence of direct testimony of facts personally known to exist to the expert witness.
In the case of Robertson Bros. v. Mobile & Ohio R. Co., 155 Miss. 198, 124 So. 334 (1929), this Court pointed out that expert testimony of the weights of cattle must be reduced to the cattle in question within the personal knowledge of the witness, as against the record of actual weight recorded on regularly-used and well-accredited scales.
It is a well-settled rule of law that testimony of a witness which is contrary to scientific principle as established by the laws of physics or mechanics is of no probative value.
The general rule is expressed by the text writer in 32 C.J.S. Evidence § 572(2), at 684-687 (1964), as follows:
"Although in some jurisdictions when there is a conflict between scientific testimony and testimony as to facts, the trier of the facts must determine the relative weight, as a general rule proof of facts will outweigh opinions or estimates contrary thereto; and opinion evidence is without weight or probative value when in conflict with the physical facts, and, accordingly, such opinion evidence must give way to uncontroverted physical facts contrary thereto, and should not be regarded as sufficient to create a substantial conflict in the evidence. So, where an expert opinion is not based on facts otherwise proved, or where it assumes facts contrary to those proved, it does not constitute substantial evidence sufficient to create a conflict.
The opinion of skilled or expert witnesses as to probabilities or possibilities does not create a conflict with, or outweigh, positive and uncontradicted factual evidence to the contrary, especially when such opinion is based on an erroneous assumption.
A statement of the result of actual measurement carries more weight than an estimate, at least where conflicting estimates and measurements are offered by the same person, or of chemical, laboratory, or other tests, although it will not necessarily prevail."
In the case of S.H. Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650 (1930), this Court in quoting from 1 Moore on Facts, section 415, 22 C.J. 738, 739, said:
"The testimony even of disinterested and unimpeached witnesses on the subjects of measurements, distances, and the like, which is based merely on memory, estimate or casual observation, must yield to that which is based on actual measurement."
Opinion evidence of an unproven fact must therefore give way to actual mechanical or scientific proof of fact. The Kress case, supra, has been adopted and cited in the following cases: Illinois Central RR Co. v. Underwood, 235 F.2d 868 (5th Cir.1956); Henson Ford, Inc. v. Crews, 249 Miss. 45, 160 So.2d 81 (1964); New Orleans & N. RR Co. v. Burney, 248 Miss. 290, 159 So.2d 85 (1963); Russell v. Mississippi Central Railroad Co., 239 Miss. 741, 125 So.2d 283 (1960); Great Southern Box Co. v. Barrett, 231 Miss. 101, 94 So.2d 912 (1957); Hardaway Contracting Co. v. Rivers, 181 Miss. 727, 180 So. 800 (1938).
The testimony of the plaintiff's witnesses that in their opinion the tubular framework of the aircraft "must have been sprained or bent," based upon outside observation must give way to the positive testimony of the inside physical examination of the tubular framework shown by the testimony of the defendant's witnesses.
We hold that opinion evidence of the plaintiff's witnesses under the facts here shown, is insufficient to make a jury issue under the claim that the tubular frame of the aircraft was bent or damaged. The *316 trial judge should have granted the instruction offered by the defendant, limiting the recovery to the repairable damage to the aircraft.
The testimony of the defendant's witnesses shows that piece by piece the aircraft could be repaired. The cockpit section and the engine of the aircraft were not damaged, and, although the aircraft was badly damaged, nevertheless, it could be repaired. The witnesses for the defendant insurance company offered a firm bid to repair the aircraft, and, as was said in Calvert Fire Ins. Co. v. Newman, 240 Miss. 10, 124 So.2d 686 (1960): "[I]t is manifest that the jury in this case was not authorized to find that the car [aircraft] suffered a total loss." 240 Miss. at 14, 124 So.2d at 688.
An aircraft is a delicate vehicle and susceptible to erratic stimuli. Unless the repair of the vehicle is made so as to re-establish the original design, the aircraft may become dangerous to fly. This is particularly true of a "crop dusting" aircraft which is ordinarily flown a few feet above the crop at a great rate of speed. All of this, however, is for the jury's consideration in considering the necessary repairs to the aircraft.
We are aware of the many cases holding that this Court will not reverse the verdict of a jury merely because the testimony offered by the appellee was stronger and that the members of this Court would have rendered a different verdict had they been members of the jury. On the other hand, where it is manifest that the jury was obviously mistaken as to whether or not a damaged vehicle could be repaired, it necessarily follows that such verdict based on this mistake was erroneous. Compare Universal Truck Loading Co. v. Taylor, 178 Miss. 143, 172 So. 756 (1937).
We conclude, therefore, that this case must be reversed for a new trial, and submitted to another jury on the issue of the cost of repair necessary to restore the aircraft to its original condition at the time of the suit, less the three thousand dollars ($3,000.00) deductible amount provided for in the insurance policy.
Reversed and remanded.
GILLESPIE, C.J., and INZER, SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.