435 So.2d 1191 (1983)
Larry D. JOHNSON
v.
H.K. FERGUSON & Aetna Casualty & Surety Company.
No. 54319.
Supreme Court of Mississippi.
August 10, 1983.
*1192 Lester C. Franklin, Pascagoula, for appellant.
J. Elmo Lang, Pascagoula, for appellees.
Before WALKER, P.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Jackson County wherein a decision of the Workmen's Compensation Commission denying benefits to appellant was affirmed. There being no substantial credible evidence to support the order of the administrative law judge and Workmen's Compensation Commission, we reverse.
On October 10, 1975, appellant Larry Johnson was employed as a laborer by appellee, H.K. Ferguson Company. At about 10:30 that morning, Johnson was moving some large wooden frames used as cement forms. They were approximately three feet wide, seven feet long, six inches deep, weighed about forty pounds, were rectangular in shape and had a handle or hand grip located in the center. Because of their size, shape and weight, the easiest manner in which to carry a form was to grab the handle and lift it onto one's back. Johnson was carrying a form in this manner when he stepped into a trench or uneven spot, causing him to lose his balance and fall to his knees, wrenching his back. Johnson immediately went to the company first aid station and from there was taken to the company physician, Dr. Thompson. Johnson was given a prescription for pain and he returned to work light duty the remainder of the day. The next morning he was unable to get out of bed because of back pain.
On October 14, 1975, four days after the accident, Johnson informed Ferguson that he desired to see a specialist and requested that they secure one for him. The following morning when he arrived at work Johnson was taken to an orthopedic surgeon, Dr. Daniel Enger. Dr. Enger admitted Johnson to the hospital where he remained for ten days. Dr. Enger diagnosed Johnson as having acute lumbosacral strain. After his discharge Johnson continued to complain of *1193 severe backache and was readmitted to the hospital by Dr. Enger on November 3, 1975, where he again remained for ten days. On November 12, Dr. Enger discharged him with a diagnosis of an acute psychiatric disturbance and a lumbosacral strain. Dr. Enger released Johnson for light duty on December 8, 1975, however, Johnson continued to complain of back pain and did not return to work.
Johnson filed a motion to controvert on February 13, 1976. After Johnson failed to appear at a scheduled pretrial conference on April 29, 1976, an order was entered on May 4 dismissing the cause without prejudice. Johnson then secured new counsel and on October 18, 1976, filed a motion for employer to provide additional medical attention and a motion to require employer to pay medical expenses incurred.
On February 10, 1977, Johnson's cause came on for hearing. During this hearing the administrative law judge admitted the deposition testimony of Dr. Lohnes, a chiropractor who had treated Johnson. Dr. Lohnes testified that Johnson had an unusually straight spine and that the present painful condition was related to the accident of October 10, 1975. On May 9, 1977, the cause was reopened for the purpose of admitting the deposition of Dr. Enger. This was Dr. Enger's first deposition in this cause and was dated February 22, 1977.
In his deposition, Dr. Enger testified that he took x-rays of Johnson's back and found a small narrowing in the L-5 disc space but that it had obviously occurred long before the accident. He further testified that the areas of pain complained of did not follow any particular back condition with which he was aware, including the disc rupture or fracture. Dr. Enger did state that to completely rule out either of these ailments would require performing a myelogram but that he did not choose to do so. To quote Dr. Enger:

I purposely avoided doing a myelogram due to the fact that I thought the patient had an underlying psychiatric condition. He was fitted with a lumbosacral back support and told I would see him as an out-patient in the office. I felt that if he persisted in having difficulty he may eventually require a myelogram for complete clearance, but I would be rather reluctant to recommend his at present... I feel quite strongly as an orthopedic surgeon that if we went ahead and further investigated Mr. Johnson's complaints, particularly going so far as a myelogram, we would only magnify his condition, and it was for this reason that I simply did not even consider sticking a needle into his back, except only as a last resort, and this never did develop.

Therefore, although he admitted that it was the sole diagnostic tool with which to achieve certainty in determining the existence or nonexistence of a disc rupture, he was adamant in his refusal to perform a myelogram.
Prior to an order on the merits, Johnson filed a motion to reopen, agreeing to take a myelogram on the advice of a Dr. Reuben Morris and moving that the carrier, appellee, be ordered to pay for it. The administrative law judge issued his findings of fact on January 3, 1978, along with an order denying the motion to reopen. The law judge's findings of fact were that, 1) Johnson had sustained a compensable injury on October 10, 1975; 2) as a result of the injury Johnson was temporarily totally disabled from October 11, 1975, through December 8, 1975; 3) Johnson suffered no permanent partial disability or loss in wage earning capacity, and 4) any medical treatment after December 17, 1975, was unrelated to the accident. The judge then ordered that Ferguson and the carrier pay Johnson $63 per week from October 11, 1975 through December 8, 1975, with credit for benefits already paid. The judge also ordered Ferguson and the carrier to pay all medical expenses related to the injury through December 17, 1975.
Johnson then filed a petition for review by full commission and subsequently a motion to open up hearing of full commission for receipt of new evidence. The full commission heard the case in review on August 14, 1978, and issued an interlocutory order *1194 dated March 30, 1979, which provided that they affirmed the law judge's findings of fact regarding the occurrence of the injury and dates of temporary total disability. However, the commission remanded the case to allow Johnson to submit further evidence regarding additional medical treatment or diagnosis, additional temporary total disability, a date of maximum recovery, the existence of permanent partial disability, preexisting condition, and loss of wage earning capacity.
On remand, the law judge admitted the deposition testimony of Dr. Pickel, a psychologist who diagnosed Johnson as having a psychoneurosis conversion reaction with depression. Dr. Pickel thought Johnson's condition resulted from personal problems and could not say with reasonable medical certainty that his symptoms were caused by the accident. He did however state that Johnson was not able to work. The law judge ruled the Workmen's Compensation Act requires disability to be proven by medical findings and that a psychologist was not qualified to give testimony regarding a medical disability. He therefore denied the request for additional disability.
Johnson then filed another petition for review by the full commission dated April 17, 1980, and a motion to transfer to administrative judge for review on newly discovered evidence dated November 6, 1980. The commission granted the second motion and eventually Johnson introduced the first deposition of Dr. Buckley, a neurosurgeon dated December 18, 1980, sixty-three days before the myelogram. Dr. Buckley testified that he had examined Johnson and was unable to determine the cause of his back pain. Dr. Buckley did note that Johnson's left lower back became inflamed after five minutes of exercise. He testified that if no other explanation for the pain became evident that he would recommend doing a myelogram. Dr. Buckley further testified that a myelogram would show an "unusual presentation" of a disc rupture although a patient presented no evidence of a rupture.
In response to Dr. Buckley's testimony the appellee introduced a second disposition of Dr. Enger. This deposition was dated January 7, 1981, and in it Dr. Enger reaffirmed his position that he would not perform a myelogram on Johnson. On February 4, 1981, the administrative law judge entered an order in which he closed the file. Five days later an order was entered which found that Dr. Buckley's testimony in his first deposition was insufficient to support an award of permanent partial disability. Johnson petitioned to have the file reopened and the petition was denied.
Because of continued complaints of pain Dr. Buckley performed a myelogram on Johnson on the 19th of February, 1981. The myelogram revealed that Johnson had a disc rupture and deformed nerve root at L-4 and 5. On February 23, 1981, Dr. Buckley performed surgery and repaired Johnson's herniated disc. Johnson then moved to reopen the record for the introduction of a second deposition of Dr. Buckley, taken April 23, 1981, subsequent to the surgery. The administrative law judge admitted Dr. Buckley's second deposition solely on the basis of Rule 8. (The right of a party to complete the record for purposes of appeal). Following that the law judge entered an order dated May 18, 1981, wherein he readopted his order of February 9, 1981, holding that Johnson's proof was insufficient. Johnson has appealed that order as well as order of February 9, 1982, through the full commission and the circuit court and now seeks the review of this Court.
The standard of review governing an appeal to this Court from a decision of an administrative agency is that of substantial evidence. Where an order of the Workmen's Compensation Commission is supported by substantial evidence such order will not be reversed. Halloway v. Prassell Enterprises, Inc., 348 So.2d 771 (Miss. 1977); Universal Mfg. Co. v. Barlow, 260 So.2d 827 (Miss. 1972). Our decision today in no way repeals, limits, or modifies that rule, rather, we take this opportunity to stress that the rule is fundamental to an orderly system of appellate review. Nevertheless, the rule is sufficiently flexible to permit the Supreme Court to examine the record as a whole and *1195 where such record reveals that the order of the commission is based on a mere scintilla of evidence, and is against overwhelming weight of the credible evidence the Court will not hesitate to reverse. Universal Mfg. Co. v. Barlow, supra. Such is the case sub judice.
The greatest evidentiary support for the decision of the commission is the testimony of Dr. Enger. In two depositions Dr. Enger testified that he originally diagnosed Johnson as having lumbosacral strain with an acute psychoneurosis. Dr. Enger's diagnosis was based on personal subjective examinations of Johnson and a series of x-rays he ordered. He admitted that the sole diagnostic procedure available to conclusively rule out the existence of a disc rupture was a myelogram, however, in the face of Johnson's continued complaints of pain he refused to perform that procedure.
The only credible evidence presented to the commission was the second deposition of Dr. Buckley. That deposition was taken after the rupture had been discovered through a myelogram and surgically confirmed and repaired. As the only witness to perform a myelogram and actually view the herniated disc, his testimony that the rupture was an "unusual presentation" capable of diagnosis only through a myelogram, was uncontradicted. Dr. Enger's testimony in no way discredited Dr. Buckley's opinion since Dr. Enger has not examined Johnson since before the existence of the herniated disc was confirmed. Indeed, Dr. Enger's second deposition, representing the appellee's final medical proof, occurred twelve days prior to the myelogram and sixteen days prior to surgery. There simply was no credible proof to contradict Dr. Buckley's opinion that:
Since this patient's symptoms have persisted in an unremitting way since his work injury of 1975, according to the medical history obtained, the ruptured disc found and operated on by me was caused by the job injury of 1975.
Further, there was no testimony offered by the appellee as to any other injury to appellant that would have explained the continued back problems being suffered by the appellant from the date of the injury, October 10, 1975, up to the time of the discovery of the ruptured disc on February 18, 1981.
When an expert's opinion is based upon an inadequate or incomplete examination, that opinion does not carry as much weight and has little or no probative value when compared to the opinion of an expert that has made a thorough and adequate examination. The subjective examinations of Dr. Enger and the x-rays conducted were little more than estimates when viewed in the light of the fact that Dr. Enger admitted that the ultimate diagnostic tool for discoverying an unusual presentation of a ruptured disc would be a myelogram.
This Court has spoken on expert opinion evidence where the expert had made an inadequate or incomplete examination. Gulf Insurance Company v. Provine, 321 So.2d 311 (Miss. 1975); Kress and Co. v. Sharp, 156 Miss. 693, 126 So. 650 (1930). The facts in Provine are analagous to those at bar. There Provine was the owner of an aircraft which had sustained damage in a crash. Provine introduced the testimony of experts who testified that the plane was a total loss. They based this opinion on an examination of the aircraft's skin, concluding that because the skin was wrinkled the tubular framework within was necessarily bent. The insurance company rebutted this evidence through the testimony of experts who removed portions of the skin and examined the frame itself, determining that it was not bent. The jury verdict reflected a finding that the plane was a total loss. We reversed and held:
The general rule is expressed by the text writer in 32 C.J.S. Evidence § 572(2), at 684-687 (1964), as follows:
Although in some jurisdictions when there is a conflict between scientific testimony and testimony as to facts, the trier of the facts must determine the relative weight, as a general rule proof of facts will outweigh opinions or estimates contrary thereto; and opinion evidence is without weight or probative value when in conflict with the *1196 physical facts, and, accordingly, such opinion evidence must give way to uncontroverted physical facts contrary thereto, and should not be regarded as sufficient to create a substantial conflict in the evidence.
... .
A statement of the result of actual measurement carries more weight than an estimate, at least where conflicting estimates and measurements are offered by the same person, or of chemical, laboratory, or other tests, although it will not necessarily prevail. (321 So.2d at 315)
This Court went further in Provine and quoted with approval the case of Kress & Co. v. Sharp, supra, as follows:
In the case of S.H. Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650 (1930), this Court in quoting from 1 Moore on Facts, section 415, 22 C.J. 738, 739, said:
"The testimony even of disinterested and unimpeached witnesses on the subjects of measurements, distances, and the like, which is based merely on memory, estimate or casual observation, must yield to that which is based on actual measurement."
Opinion evidence of an unproven fact must therefore give way to actual mechanical or scientific proof of fact. The Kress case, supra, has been adopted and cited in the following cases: Illinois Central RR Co. v. Underwood, 235 F.2d 868 (5th Cir.1956); Henson Ford, Inc. v. Crews, 249 Miss. 45, 160 So.2d 81 (1964); New Orleans & N. RR Co. v. Burney, 248 Miss. 290, 159 So.2d 85 (1963); Russell v. Mississippi Central Railroad Co., 239 Miss. 741, 125 So.2d 283 (1960); Great Southern Box Co. v. Barrett, 231 Miss. 101, 94 So.2d 912 (1957); Hardaway Contracting Co. v. Rivers, 181 Miss. 727, 180 So. 800 (1938). (321 So.2d at 315)
This rule is supported in other jurisdictions and applied to Workmen's Compensation cases. The California Supreme Court addressed this issue squarely and stated:
Expert medical opinion, however, does not always constitute substantial evidence on which the board may rest its decision. Courts have held that the board may not rely on medical reports, which it knows to be erroneous (McCoy v. Industrial Acc. Com. (1966) 64 Cal.2d 82, 92, 48 Cal. Rptr. 858, 410 P.2d 362), upon reports which are no longer germane (Jones v. Workmen's Comp. App. Bd. (1968) 68 Cal.2d 476, 480, 67 Cal. Rptr. 544, 439 P.2d 648), or upon reports based upon inadequate medical history of examinations (West v. Industrial Acc. Com. (1947) 79 Cal. App.2d 711, 716, 180 P.2d 972; Blankenfeld v. Industrial Acc. Com. (1940) 36 Cal. App.2d 690, 698, 98 P.2d 584).
Place v. Workmen's Compensation Appeals Board, 3 Cal.3d 372, 90 Cal. Rptr. 424, 475 P.2d 656 (1970). See also West v. Industrial Acc. Commission of California, et al., 79 Cal. App.2d 711, 180 P.2d 972 (1947).
An apt analogy might run like this. The trier of the facts is charged to determine how many teeth are in a particular horse's mouth. One expert horse dentist says it's 36. Yet he acknowledges that he has not opened the horse's mouth to make an accurate count. He opines that the horse is suffering from severe neurosis and would suffer a psychological setback if subjected to the in-mouth count. Another horse dentist, however, perseveres in the face of the horse's neurosis, opens the mouth and counts only 32 teeth. A finding of fact that the horse had 36 teeth in its mouth would not be supported by substantial evidence.
Therefore, in the case sub judice the commission's decision was not based upon substantial evidence and was against the overwhelming weight of the credible expert medical testimony. The administrative law judge's refusal to consider the testimony of Dr. Richard Buckley was error. It follows that we must reverse and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.