## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CT-00318-SCT

*JERRY WAYNE SMITH*

*v.*

*COMMERCIAL TRUCKING COMPANY, INC. AND UNITED STATES FIDELITY AND GUARANTY COMPANY*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/97 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TIMOTHY M. FARRIS |
| ATTORNEY FOR APPELLEES: | ROBERT J. ARNOLD, III |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 6/10/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/1/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Smith, a manual laborer, injured his back at his employment while changing truck tires. He saw three physicians who diagnosed acute lumbar strain and no permanent injury. Continuing to experience pain and inability to function, Smith, with the assistance of his attorney, saw a fourth physician who performed a second MRI and a myelogram as well as other tests. These tests indicated a herniated disc, and this physician assessed permanent injury and disability and recommended corrective surgery.

¶2. The ALJ found no permanent disability and this determination was affirmed by the full commission and later by the circuit court. Smith appealed and argues that the commission failed to give proper weight to the testimony of the physician who performed diagnostic tests not performed by the others. The Court of Appeals affirmed the circuit court and Smith has filed this Petition for Writ of Certiorari alleging the Court of Appeals opinion is contrary to our prior opinions, primarily *Johnson v. Ferguson,* 435 So.2d 1191 (Miss. 1983) in which the Court said that greater weight should be accorded to the testimony of experts who perform critical tests over those who do not. Because the Court of Appeals, the circuit court and the Commission failed to properly apply this precedent, the case is reversed and remanded.

# FACTS

¶3. Smith is a fifty-two year old man with an eighth grade education and no vocational training. His work experience includes employment as an oil industry roustabout, a pulpwooder, and a heavy equipment mechanic. All of these jobs involved heavy manual labor.

¶4. In 1992, Smith was hired as a mechanic by the appellee, Commercial Trucking Company, Inc. of Laurel, Mississippi (Commercial Trucking). Commercial Trucking's workers' compensation carrier is United States Fidelity and Guaranty Company (USF&G). Smith's job requirements included changing truck tires that weighed anywhere from 300 to 500 pounds. He testified that on September 4, 1993, he was bending over to pick up a truck tire when he felt back pain radiating down his leg. When the pain continued through the next day, he went to the emergency room at Methodist Hospital in Hattiesburg where he was seen by orthopedic surgeon Dr. Cleve Johnson. Dr. Johnson diagnosed a lumbar strain and prescribed physical therapy. During four more office visits over the next two weeks, Smith continued to complain of lower back pain and that the physical therapy was having no effect. On September 20, 1993, Dr. Johnson ordered an MRI, which showed a mild bulging at L4-L5 and normal degenerative changes. Dr. Johnson referred Smith to neurosurgeon Dr. Michael Lowry, who, based on the MRI, found some evidence of a small disc herniation at L5-S1, but attributed it to normal degenerative changes. Smith testified that Dr. Lowry did not recommend any further testing or therapy. Dr. Lowry's records and a Functional Capacity Examination (FCE) report by physical therapist Marty Cheeks reflect a subjective finding that Smith may have been exaggerating the extent of his pain and deliberately limiting his range of movement. Smith testified that while Dr. Lowry released him for light duty, his employer did not have any light duty available.

¶5. Smith returned to see Dr. Johnson who prescribed continued physical therapy. When Smith complained that the physical therapy was not improving his condition or the resulting pain, Dr. Johnson referred him to neurosurgeon Dr. John Neill. Dr. Neill prescribed a program of exercise and advised him to lose weight and quit smoking. At the time, Smith was 6'1" and 234 pounds. Smith testified that his attempts to exercise by walking one half mile a day made him sick and increased his pain.. Dr. Neill's records reflect that Smith's MRI was essentially normal and there was nothing further he could do for him since he appeared to have reached maximum medical improvement with no permanent impairment. As a result of this maximum improvement, Dr. Neill released Smith to go back to work. Up until this point, Smith had been receiving temporary disability benefits and his employer had paid his medical benefits. Smith testified that when Dr. Neill told him he could return to his regular employment, he did not do so because he knew he was unable to lift the 500 pound tires he was required to change as part of that employment and he had already been told that no light duty was available.

¶6. At this point, Smith testified that his attorney referred him to orthopedic surgeon Dr. Elmer Nix, whom he first saw on May 24, 1994. The State Vocational Rehabilitation program agreed to pay for Dr. Nix's services, but not the surgery Dr. Nix ultimately recommended. Dr. Nix ordered a myelogram, a CT scan, and a second MRI. Dr. Nix was the only physician to conduct nerve block and diskogram tests and he performed the only myelogram in this case. These test results showed a bulge at the L4 disc, which Dr. Nix noted could be within neurological limits but was suspicious for a central herniation. He determined that there was likely a problem with the L4 disc but it was unclear whether it was the source of Smith's pain. He did exclude the L5 disc as the source of the pain. In a letter to Smith's attorney dated June 26, 1995, Dr. Nix concluded that Smith probably had a herniated nucleous pulposus at L4 centrally and a possible internal disc disruption at L4. Dr. Nix recommended a surgical fusion because he thought Smith's condition

would remain the same or worsen without surgery. In addition, Dr. Nix noted that Smith had a 30% permanent medical impairment to the body as a whole, which would probably decrease to 15-20% with successful surgery, and that he was physically unable to perform his previous employment duties. Smith testified that he wanted the surgery, but was unable to pay for the procedure.

¶7. In an order dated December 28, 1995, the administrative law judge found that Smith was temporarily disabled from September 4, 1993, the date of the injury, to March 3, 1994, the date that Dr. John Neill found he had reached maximum medical improvement. As a result, Smith was entitled to temporary disability payments and medical benefits for that period of time. However, the administrative law judge found that Smith did not have a permanent medical impairment because of the work-connected injury. In reaching this finding, the administrative law judge noted that of the four physicians who had treated Smith, Dr. Nix was the only one to find permanent impairment and to recommend surgery. Apparently discounting Dr. Nix's findings, the administrative law judge also stated that even if the preponderance of medical evidence had established a permanent medical impairment, Smith did not establish a prima facie case of disability because of his failure to make an effort to secure the same or other employment after reaching maximum medical improvement. Consequently, the administrative law judge ruled that Smith was not entitled to permanent disability payments.

¶8. In a petition dated January 9, 1996, Smith sought review of the administrative law judge's decision, claiming the order was contrary to the overwhelming weight of the evidence and counter to established law. He also claimed the administrative law judge failed to consider the substantial evidence in the record and that the decision was arbitrary and capricious. After a Full Commission hearing on July 8, 1996, the Mississippi Workers' Compensation Commission affirmed the administrative law judge's decision. On appeal, the Circuit Court of Jones County also affirmed the decision by the administrative law judge and the Workers' Compensation Commission. The Court of Appeals affirmed the circuit court.

### ANALYSIS

¶9. The instant case is factually similar to *Johnson v. Ferguson,* 435 So.2d 1191 (Miss. 1983). In that case, at least two physicians saw and treated Johnson for a back injury. His first orthopedic specialist refused to perform a myelogram claiming same to be unwarranted. He had diagnosed lumbosacral strain and an acute psychological disturbance which was the basis of his decision not to perform a myelogram. A second orthopedic specialist determined that a myelogram was required, and after performing the test, discovered that Johnson did in fact have a ruptured disc and resulting permanent impairment. In reversing a finding of the commission determination that there was no permanent impairment, we said:

> The standard of review governing an appeal to this Court from a decision of an administrative agency is that of substantial evidence. Where an order of the Workmen's Compensation Commission is supported by substantial evidence such order will not be reversed. *Halloway v. Prassell Enterprises, Inc.*, 348 So.2d 771 (Miss.1977); *Universal Mfg. Co. v. Barlow,* 260 So.2d 827 (Miss.1972). Our decision today in no way repeals, limits, or modifies that rule, rather, we take this opportunity to stress that the rule is fundamental to an orderly system of appellate review. Nevertheless, the rule is sufficiently flexible to permit the Supreme Court to examine the record as a whole and where such record reveals that the order of the commission is based on a mere scintilla of evidence, and is against overwhelming weight of the credible evidence the Court will not hesitate to reverse. *Universal Mfg. Co. v. Barlow, supra*. Such is the case sub judice.

The greatest evidentiary support for the decision of the commission is the testimony of Dr. Enger. In two depositions Dr. Enger testified that he originally diagnosed Johnson as having lumbosacral strain with an acute psychoneurosis. Dr. Enger's diagnosis was based on personal subjective examinations of Johnson and a series of x-rays he ordered. He admitted that the sole diagnostic procedure available to conclusively rule out the existence of a disc rupture was a myelogram, however, in the face of Johnson's continued complaints of pain he refused to perform that procedure.

The only credible evidence presented to the commission was the second deposition of Dr. Buckley. That deposition was taken after the rupture had been discovered through a myelogram and surgically confirmed and repaired. As the only witness to perform a myelogram and actually view the herniated disc, his testimony that the rupture was an "unusual presentation" capable of diagnosis only through a myelogram, was uncontradicted. Dr. Enger's testimony in no way discredited Dr. Buckley's opinion since Dr. Enger has not examined Johnson since before the existence of the herniated disc was confirmed. Indeed, Dr. Enger's second deposition, representing the appellee's final medical proof, occurred twelve days prior to the myelogram and sixteen days prior to surgery.

* * * *

***When an expert's opinion is based upon an inadequate or incomplete examination, that opinion does not carry as much weight and has little or no probative value when compared to the opinion of an expert that has made a thorough and adequate examination.*** The subjective examinations of Dr. Enger and the x-rays conducted were little more than estimates when viewed in the light of the fact that Dr. Enger admitted that the ultimate diagnostic tool for discovering an unusual presentation of a ruptured disc would be a myelogram.

This Court has spoken on expert opinion evidence where the expert had made an inadequate or incomplete examination. *Gulf Insurance Company v. Provine*, 321 So.2d 311 (Miss.1975); *Kress and Co. v. Sharp,* 156 Miss. 693, 126 So. 650 (1930). The facts in *Provine* are analogous to those at bar. . . . We reversed and held:

The general rule is expressed by the text writer in 32 C.J.S. *Evidence* § 572(2), at 684-687 (1964), as follows:

Although in some jurisdictions when there is a conflict between scientific testimony and testimony as to facts, the trier of the facts must determine the relative weight, as a general rule proof of facts will outweigh opinions or estimates contrary thereto; and opinion evidence is without weight or probative value when in conflict with the physical facts, and, accordingly, such opinion evidence must give way to uncontroverted physical facts contrary thereto, and should not be regarded as sufficient to create a substantial conflict in the evidence.

. . . .

A statement of the result of actual measurement carries more weight than an estimate, at least where conflicting estimates and measurements are offered by the same person, or of chemical, laboratory, or other tests, although it will not necessarily prevail. (321 So.2d at 315)

This Court went further in *Provine* and quoted with approval the case of *Kress & Co. v. Sharp, supra*, as follows:

In the case of *S. H. Kress & Co. v. Sharp*, 156 Miss. 693, 126 So. 650 (1930), this Court in quoting from 1 *Moore on Facts*, section 415, 22 C.J. 738, 739, said: "The testimony even of disinterested and unimpeached witnesses on the subjects of measurements, distances, and the like, which is based merely on memory, estimate or casual observation, must yield to that which is based on actual measurement."

Opinion evidence of an unproven fact must therefore give way to actual mechanical or scientific proof of fact. The *Kress* case, *supra,* has been adopted and cited in the following cases: *Illinois Central RR Co. v. Underwood*, 235 F.2d 868 (5th Cir.1956); *Henson Ford, Inc. v. Crews,* 249 Miss. 45, 160 So.2d 81 (1964); *New Orleans & N. RR Co. v. Burney*, 248 Miss. 290, 159 So.2d 85 (1963); *Russell v. Mississippi Central Railroad Co.*, 239 Miss. 741, 125 So.2d 283 (1960); *Great Southern Box Co. v. Barrett*, 231 Miss. 101, 94 So.2d 912 (1957); *Hardaway Contracting Co. v. Rivers,* 181 Miss. 727, 180 So. 800 (1938). (321 So.2d at 315)

* * * *

An apt analogy might run like this. The trier of the facts is charged to determine how many teeth are in a particular horse's mouth. One expert horse dentist says it's 36. Yet he acknowledges that he has not opened the horse's mouth to make an accurate count. He opines that the horse is suffering from severe neurosis and would suffer a psychological setback if subjected to the in-mouth count. Another horse dentist, however, perseveres in the face of the horse's neurosis, opens the mouth and counts only 32 teeth. A finding of fact that the horse had 36 teeth in its mouth would not be supported by substantial evidence.

Therefore, in the case sub judice the commission's decision was not based upon substantial evidence and was against the overwhelming weight of the credible expert medical testimony. The administrative law judge's refusal to consider the testimony of Dr. Richard Buckley was error.

435 So.2d at 1194-95 [emphasis supplied].

¶10. Here, as in *Johnson,* the finder of fact, the Commission, apparently ignored the testimony of the only physician to perform a complete series of diagnostic tests. In *Johnson*, the first treating physicians failed or refused to perform tests that would have conclusively proved or disproved a ruptured disc based on subjective conclusions that Johnson was malingering and feigning his generalized complaints of pain. This appears to be the case here. The opinions of Drs. Johnson, Lowry, and Neill seem to have also been influenced by the results of the Functional Capacity Evaluation (FCE) performed by the vocational/physical therapist in which the examiner subjectively determined that Smith was demonstrating "inappropriate pain behavior" during the tests and was "self-limiting" his abilities.

¶11. While it is true that Dr. Johnson initially ordered an MRI, it is also uncontradicted that other than physical examinations, this is the only diagnostic tool used by Drs. Johnson, Lowery or Neill.[1] In his deposition, on cross-examination, Dr. Neill admitted or agreed that:

1. Besides the previous x-rays and physical examinations, the only diagnostic tool he utilized was the MRI which had been previously ordered by Dr. Johnson.

2. A disc may take several months from the initial injury to herniate before showing up on MRI's.

3. At the time of his testimony, he had not reviewed any of the reports of Dr. Nix nor viewed the results of any of the additional tests performed by Dr. Nix nor had he seen or treated Smith since he released him and could not testify as to his present condition.

¶12. There was absolutely no testimony or evidence offered to show that Smith suffered any additional or other injury after the work-related injury or that he had any prior back injury that prevented or inhibited his ability to function normally or perform his work. In addition to a second MRI, Dr. Nix performed a CT scan, a myelogram, a diskogram, and nerve block tests, and on the basis of a physical exam and these supplemental *objective* test results rendered an opinion that Smith probably did suffer and does have a herniated disc resulting in a permanent impairment which may improve with surgery. Smith is willing to undergo the surgery but can not afford it, and the employer/carrier has not been compelled, up to this point, to provide it.

¶13. Dr. Nix is the only expert to see the injury because he is the only expert to utilize the tools to allow him to see the injury rather than relying primarily on his subjective opinion or those of others. Accordingly, Dr. Nix's opinion is entitled to substantially more weight under *Johnson* rather than being totally discounted by the Commission. It really makes no difference if there are three doctors or thirty doctors who agree with Dr. Neill if none of them used necessary diagnostic tools, tests, or procedures to allow them to see the problem. The test in such a case is not one of the weight of the sheer number of duly qualified experts, but rather the credibility of the expert(s) based on the weight of objective proof, evidence, or results used in rendering an opinion. As we stated in *White v. Hattiesburg Cable Co.,* 590 So.2d 867 (Miss. 1991);

> We do not curb the authority of the Commission, but broaden it to meet the munificent purpose of the Act. There is a broad public policy behind the Act to provide the necessary treatment to restore the injured worker to health and productivity. This should be the focus of the Commission. Was [Is] this treatment necessary? Are the charges reasonable? These questions should be thoroughly investigated, . . .

*Id.* at 870.

¶14. Addressing the assertion in the Court of Appeals opinion that Smith failed to prove loss of wage earning capacity by his failure to return or seek employment after reaching maximum medical improvement under the holding in *Jordan v. Hercules, Inc.*, 600 So. 2d 179, 183 (Miss. 1992), there was no reason for the Court of Appeals to address this issue. The Commission, in affirming the administrative law judge, simply found that on the basis of the medical evidence, Smith had failed to prove that he had any physical impairment. The only issue in this case requiring resolution on appeal is whether the finder of fact, the Commission, properly weighed Smith's proof of a permanent physical disability or impairment which was causally related to a work-related accident. We hold that it did not. Once the determination and extent of a permanent injury is properly re-assessed on remand in accordance with this opinion, the finder of fact should then determine whether Smith has reached maximum medical improvement, and if so, then address the question of loss of wage earning capacity. If he has not reached maximum medical improvement for lack of the surgery recommended by his physician in 1995 which he testified he wanted but could not afford, the *Jordan* issue is moot.

## CONCLUSION

¶15. The decision of the Mississippi Worker's Compensation Commission that Jerry Wayne Smith did not

sustain any permanent disability as a result of his work-related injury is not supported by substantial evidence in the record. Specifically, the Commission failed to give proper weight to the opinion of Dr. Elmer Nix, the only physician who ordered all of the diagnostic tests necessary to identify or confirm Smith's injury.

¶16. Both the circuit court and the Court of Appeals erred in affirming the Commission's decision. Therefore, we reverse the judgment of the Court of Appeals and the circuit court as well as the decision of the Commission, and we remand this case to the Commission for prompt determination consistent with this opinion. On remand, the Commission should reassess its finding of no permanent disability, giving proper weight to the opinion of Dr. Nix. If Smith has reached maximum medical improvement, then it should address loss of wage-earning capacity. If not, a determination of temporary benefits and future medical treatment should be addressed.

¶17. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND COBB, JJ., CONCUR.**

1. Since the Commission findings are primarily based on Dr. Neill's testimony, this opinion will also concentrate on Dr. Neill's deposition testimony and the findings of Dr. Nix in contradiction thereof.