¶ 1. Lina DiGrazia was injured on the job at the Grand Casino Biloxi when she was hit on the head by the top door of a freight elevator. She initially received temporary total disability benefits for her injury but later filed a petition to controvert claiming that she was permanently *Page 1234 
and totally disabled as a result of her head injury. After a hearing held on August 15, 2001, the administrative law judge issued an opinion dismissing her petition, and the Commission affirmed. DiGrazia appealed to the Circuit Court of Harrison County, which affirmed the order of the Commission. Aggrieved, DiGrazia appeals to this Court. Finding that the order of the Commission was supported by substantial evidence, we affirm.
 STATEMENT OF FACTS ¶ 2. Lina DiGrazia began working at the Grand Casino Biloxi as a cashier on or about September 27, 1994. On September 6, 1995, as DiGrazia was returning to her post from having taken a break, she stepped onto the service elevator; the top door of the elevator closed and hit her head. Although the impact did not render her unconscious, DiGrazia claimed that she suffered head, neck, and back pain, and that she was unable to move her right leg. She was rushed to the hospital in Ocean Springs, where she was treated by Dr. Fred Dale. Dr. Dale performed a CT scan, which was found to be normal, and prescribed Tylenol for her headache. He told DiGrazia not to return to work for twenty-four hours, but indicated that she could return to work on September 8 with no limitations.
 ¶ 3. DiGrazia testified that Dr. Dale referred her to Dr. Terry Millette, a neurologist.[1] Dr. Millette examined DiGrazia on September 19 and found that she had mild cervical muscle spasm, and that she "had a post traumatic headache-like syndrome, or a near post concussion-like syndrome." Dr. Millette was of the opinion that DiGrazia could not immediately return to work because of her injury. Based on Dr. Millette's diagnosis and refusal to release DiGrazia to work, Grand Casino paid temporary total disability benefits from September 1995 through March 1996. By January 5, 1996, Dr. Millette noted that DiGrazia's headaches had resolved but that she continued to be plagued by anxiety and stress. Dr. Millette was of the opinion that DiGrazia reached maximum medical improvement, from a neurological standpoint, on April 18, 1996. He believed, however, that she continued to suffer from psychiatric problems, which had either been caused or exacerbated by her 1995 injury. In his opinion, this was a life-threatening event in the eyes of DiGrazia. Dr. Millette was deposed on three separate occasions during the course of this litigation, and he continually maintained his belief that DiGrazia suffered from psychiatric problems even following the resolution of her neurological problems. But, in an office note dated April 18, 1996, he stated that he would "defer to the psychiatrist"[2] in regards to DiGrazia's psychiatric problems. Also, he was of the opinion that DiGrazia should at least try to return to work, although he thought it unlikely that she would be successful in returning to employment.
 ¶ 4. Testimony at hearing indicated that, following her release from work due to her injury, DiGrazia moved to Jackson, Mississippi, where she lived with one of her daughters. She testified that she had no desire to return to Biloxi. It is undisputed that Grand Casino made offers for DiGrazia to return to work on more than one occasion. Grand Casino made its first offer on March 12, 1996, and then offered *Page 1235 
again on June 17. DiGrazia claimed not to have received the June 17 letter until after the expiration of the job offer. Then, on July 17, DiGrazia requested, through counsel, to be allowed to return to work with Grand Casino.[3] Grand Casino did not respond. Approximately two years later, after DiGrazia had filed her petition to controvert, Grand Casino made several employment offers of "modified" positions that would accommodate DiGrazia's alleged psychiatric disabilities. DiGrazia denied these later offers through her counsel, claiming that she was disabled and unable to work.
 ¶ 5. Grand Casino conducted independent medical examinations of DiGrazia through Dr. Diane Ross, a neurologist, and Dr. Henry Maggio, a psychiatrist. Dr. Ross examined DiGrazia on November 8, 1995. She found that DiGrazia had suffered a head injury with concussion, and that this injury led to DiGrazia's problems with speech, anxiety, and headaches. Dr. Ross found that DiGrazia's stuttering was caused by anxiety, and not by an organic source, such as her head injury. When deposed, Dr. Ross reviewed the job description for a cage cashier, and stated her belief that DiGrazia could return to work, from a neurological standpoint. Dr. Ross deferred to Dr. Maggio on DiGrazia's condition from a psychiatric standpoint.
 ¶ 6. Dr. Maggio examined DiGrazia on March 6, 1996. He reviewed her past history, primarily through medical records, and then interviewed her for a period of approximately two hours.[4]
Dr. Maggio found DiGrazia's past history to be relevant to her current condition. From his review of DiGrazia's medical records, he noted that her mother had died at an early age, and that she had dropped out of high school and moved to Europe with her father following her mother's death. DiGrazia then suffered three unsuccessful marriages, one of which involved infidelity on the part of her husband, and two which involved abuse. Dr. Maggio noted that in 1994 DiGrazia was examined by her family physician, Dr. Striegel, to whom she complained of weight loss, which she attributed to stress. DiGrazia claimed that the stress was tied to the fact that her son was an alcoholic, and because she could not work in the closed office space at the casino. In response, Dr. Striegel prescribed medication for DiGrazia's anxiety and depression. During her interview with Dr. Maggio in 1996, however, DiGrazia stated that she was not depressed, although she admitted that she was anxious because of her alcoholic son. Based on these observations, Dr. Maggio found that DiGrazia suffered from (1) adjustment disorder, with mixed emotions of anxiety and depression, but that this disorder had resolved, (2) personality disorder, which preexisted her employment at Grand Casino, and (3) post traumatic headache syndrome, which resulted from her injury, but had resolved. Dr. Maggio did not believe that DiGrazia suffered from post-traumatic *Page 1236 
stress syndrome, because, in Dr. Maggio's opinion, DiGrazia did not experience a life-threatening event. Dr. Maggio was of the opinion that DiGrazia had the ability from a psychiatric standpoint to return to her original job with no modifications. However, he also noted that DiGrazia had a strong personal desire not to return to work.
 ¶ 7. DiGrazia filed her petition to controvert on October 17, 1997, claiming that she was permanently and totally disabled. After a hearing on the matter, the administrative law judge issued an opinion on August 15, 2001, and found that DiGrazia: (1) did not sustain permanent disability related to her head injury; (2) failed to show that her psychiatric condition was causally related to her head injury; and (3) failed to show a reasonable effort to find employment pursuant to section 71-3-3(I) of the Mississippi Code. On appeal, the Commission issued an order affirming the opinion of the administrative judge. DiGrazia then appealed to the Circuit Court of Harrison County, which issued an opinion affirming the Commission. Aggrieved, DiGrazia perfected this appeal.
 STANDARD OF REVIEW ¶ 8. Our standard of review on an appeal from the Workers' Compensation Commission is limited. Hardaway Co. v. Bradley,887 So.2d 793, 795 (¶ 11) (Miss. 2004). The Commission is the ultimate fact finder, and we will affirm the findings of the Commission if they are supported by substantial evidence. Id.
(citing Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988)). We will reverse when the findings of the Commission are based on a mere scintilla of evidence that goes against the overwhelming weight of evidence. Johnson v. Ferguson,435 So.2d 1191, 1194-95 (Miss. 1983).
 ISSUES AND ANALYSIS ¶ 9. There are two issues on appeal: (1) whether the decision of the administrative law judge, as affirmed by the Commission, is supported by substantial evidence, and (2) whether the administrative law judge, as affirmed by the Commission, erred in finding that the appellant made no effort to return to work. We affirm the Commission on both questions.
(1) The decision of the administrative judge, as affirmed by the Commission, is supported by substantial evidence.
 ¶ 10. DiGrazia argues that the administrative law judge's findings that she suffered no permanent disability, and that her condition was not causally related to her head injury, are based on a mere scintilla of evidence. DiGrazia bases her contention on the fact that Dr. Millette was her primary treating physician for neurological injury, and saw her "at least twenty-five times" for treatment of her injury. Dr. Maggio and Dr. Ross, however, each saw DiGrazia on only one occasion. DiGrazia further argues that, despite the fact that Dr. Millette is a neurologist who deferred to Dr. Maggio on questions of DiGrazia's psychiatric health, Dr. Millette's testimony should be given full weight because of the overlap between the practices of neurology and psychiatry. For these reasons, DiGrazia argues that Dr. Millette's testimony should be accorded more weight than that of Dr. Maggio and Dr. Ross. Grand Casino counters that DiGrazia alleged an emotional/psychiatric problem as the source of her disability, and therefore that Dr. Maggio, as a psychiatrist, offered the most credible expert testimony.
 ¶ 11. The Mississippi Supreme Court and the Court of Appeals have consistently held that, when the testimony of conflicting medical experts is being weighed, we "will not determine where the preponderance *Page 1237 
of the evidence lies . . . the assumption being that the Commission as trier of fact, has previously determined which evidence is credible, has weight, and which is not." Hardaway,887 So.2d at 795-96 (¶ 12); see Oswalt v. Abernathy Clark,625 So.2d 770, 772 (Miss. 1993); Baugh v. Cent. Miss. Planning Dev. Dist., 740 So.2d 342, 344 (¶ 8) (Miss.Ct.App. 1999). In the instant case, despite DiGrazia's contentions, expert testimony was offered by Dr. Maggio which established that DiGrazia was not suffering from a psychiatric disability caused by her head injury. Dr. Maggio found that any psychological problems DiGrazia suffered as a result of her injury had resolved, and that her personality disorder was a preexisting condition. He found that her anxiety and stress existed previous to her injury, and that her background history disclosed far greater causes for stress and anxiety than her resolved head injury. He also found that DiGrazia did not suffer from post-traumatic stress syndrome, because she had not experienced a life-threatening event. Dr. Millette believed that DiGrazia's psychiatric condition was actuated in some part by her injury, but he nevertheless deferred to Dr. Maggio on questions of psychiatry. Dr. Maggio's testimony was relevant expert medical testimony which could be weighed by the Commission in making its determination. The fact that Dr. Maggio saw DiGrazia for a period of two hours was only a factor that the Commission could weigh in making its determination. Furthermore, it was uncontested that DiGrazia had fully recovered from any neurological disability. The only question left, then, was whether she suffered from a psychiatric disability, and the opinion rendered by Dr. Maggio, based upon DiGrazia's personal history and the two-hour examination, was clearly substantial evidence on which the Commision could base a decision.
 ¶ 12. DiGrazia argues that the instant case is similar toJohnson, wherein the court stated that "when an expert's opinion is based upon an inadequate or incomplete examination, that opinion does not carry as much weight and has little or no probative value when compared with the opinion of an expert that has made a thorough and adequate examination." Johnson,435 So.2d at 1195. Thus, DiGrazia argues that Dr. Maggio's opinion is merely a scintilla of evidence, and therefore insufficient to sustain the Commission's decision. We find Johnson to be inapplicable to the case at bar. The fact that Dr. Maggio examined DiGrazia on only one occasion does not render his examination "inadequate or incomplete." The evidence shows that Dr. Maggio interviewed DiGrazia for a period of two hours, and that he carefully examined her medical records. Certainly Dr. Millette examined DiGrazia on more occasions than did Dr. Maggio, but this fact does not automatically cause Dr. Maggio's examination to be inadequate. Even Dr. Millette testified that he was not aware of DiGrazia's medical history while he was treating her. Arguably, then, Dr. Maggio's examination was more thorough than Dr. Millette's, in that respect. See Hardaway,887 So.2d at 796 (testimony of two physicians who conducted independent medical examinations was substantial evidence to support the decision of the Commission, even when there was conflicting testimony from a physician who had treated the claimant over a longer period of time).
 ¶ 13. We conclude that the decision of the administrative judge, as affirmed by the Commission, was based upon substantial evidence.
(2) The administrative judge, as affirmed by the Commission, did not err in finding that DiGrazia made no effort to return to work.
 ¶ 14. DiGrazia states that she was terminated from her employment at some *Page 1238 
time after she had been injured, and that Grand Casino then refused to allow her to return to work. She argues that she made an effort to return to work by sending a letter through counsel on July 17, 1996, to Grand Casino, requesting that she be allowed to return. Grand Casino admittedly did not respond to this offer; however, it argues that numerous job offers were forwarded to DiGrazia in 1996 and 1999. DiGrazia counters that the 1996 offers were received when she was still under the care of a doctor, or that she received the offers after they had expired by their own terms. She claims that the 1999 offers were "too little, too late."
 ¶ 15. The Mississippi Workers' Compensation Act defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment. . . ." Miss. Code Ann. section 71-3-3(i) (2004).
 If the injury prevents the employee from resuming his former trade, work or employment, this alone is not the test of disability to earn wages or the test of the degree of such disability, but the definition relates to loss of capacity in "the same or other employment," and the meaning is that the employee, after his period of temporary total incapacity, must seek employment in another or different trade to earn his wages.
Dunn, Mississippi Workmen's Compensation § 72. The claimant need not show the absolute unavailability of other employment.Thompson v. Wells-Lamont Corp., 362 So.2d 638, 641 (1978). However, the claimant must make some effort to secure employment in another or different trade, and once that effort have been made, "the focus shifts to the question whether that effort was reasonable under the prevailing circumstances." Dunn, § 72.1.
 ¶ 16. DiGrazia's argument fails because she does not claim to have made any effort to "seek employment in another or different trade." While it does appear that she attempted, on one occasion, to contact Grand Casino and return to her job in July of 1996, she does not assert that she sought any other employment. Rather, she simply argues that she "was unable to even attempt to go to work." This argument is contrary to her arguments before the unemployment appeals referee, wherein she claimed to be able to return to light duty work. It is also contrary to the testimony of all three testifying physicians, who each stated that DiGrazia should at least attempt to return to work. Even Dr. Millette, despite his pessimism about DiGrazia's ability to perform in the workplace, opined that she should make an attempt to return to work. The administrative law judge found that Grand Casino had offered DiGrazia modified positions on at least five different occasions, all of which DiGrazia declined for various reasons. DiGrazia, according to her own testimony, has made no efforts to secure employment, other than a solitary letter mailed to Grand Casino in July 1996.
 ¶ 17. In proving disability, "[t]he claimant has the burden of proving a prima facie case by showing reasonable efforts to find other employment." Dunn, § 72.1; see Thompson,362 So.2d at 640. DiGrazia has not met her burden of proving a prima facie case by showing reasonable efforts to find other employment. We therefore conclude that there was substantial evidence on which the Commission could find that DiGrazia did not prove that she was disabled pursuant to § 71-3-3(I). Accordingly, the circuit court correctly affirmed the Commission's decision.
 ¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY ISAFFIRMED. ALL COSTS *Page 1239 OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
[1] It is unclear whether she was referred by Dr. Dale, or by her family doctor, Dr. William Striegel.
[2] At the time Dr. Millette wrote this note, DiGrazia had already been examined by Dr. Henry Maggio. It appears, therefore, that "the psychiatrist" refers to Dr. Maggio.
[3] DiGrazia applied for unemployment benefits on August 1, 1996. Her initial claim was denied, because "she was not released as able to return to work by her physician emotionally." However, she appealed and on October 15, 1996, she was retroactively awarded benefits from September 23, 1996. The appeals referee based her decision on the fact that DiGrazia's doctor released her for light duty on September 23, and thus on this date she was "able to return to work."
[4] Dr. Millette was not aware of DiGrazia's background history when he treated her. However, when confronted with DiGrazia's background history and Dr. Maggio's analysis, Dr. Millette held firm to his belief that her injury in some way disabled her from a psychiatric standpoint. Nevertheless, he deferred to Dr. Maggio on questions of psychiatry.