ISHEE, J„
 

 for the Court:
 

 ¶ 1. Christine Lang, a long-term licensed practical nurse (LPN), was injured on the job at Baptist Medical Center (Baptist) in Jackson, Mississippi, and the Mississippi Workers’ Compensation Commission (Commission) awarded her temporary total disability benefits, found that she suffered a 20% diminishment of her wage-earning capacity, and awarded her permanent partial disability benefits. Baptist and Baptist’s insurance carrier, Reciprocal of America, (collectively, the employer and carrier), along with Lang, appealed the Commission’s order to the Circuit Court for the First Judicial District of Hinds County, which affirmed the Commission’s decision. Lang and the employer and carrier now appeal to this Court. Lang seeks to have the more generous ruling of the administrative judge (AJ) restored, claiming the Commission’s decision was not supported by substantial evidence. The employer and carrier base their appeal primarily on their position that the Commission should not have ordered permanent partial disability benefits after finding that Lang had not made the required work-search effort to return to work. They also argue Lang did not sustain an on-the-job injury.
 

 ¶ 2. Finding no error, we affirm.
 

 FACTS
 

 ¶ 3. In 1979, after earning her GED and an LPN, Lang began her employment with Baptist and continually worked there until she was disabled in 2002. Lang, who was fifty-two years old at the time of the accident, was earning a wage of $641 per week when the subject accident occurred. Lang stated that prior to the accident, it was her intention to work three more years at Baptist and take early retirement at age fifty-five. ■
 

 ¶ 4. Lang testified that on January 31, 2002, she was assisting a 300-pound patient who was awaiting a procedure at Baptist. The patient was scheduled to be next in line for the procedure, but suddenly, the patient needed to use the restroom and required assistance. Lang said Bap
 
 *816
 
 tist had a lift team, but it sometimes took them an hour to respond to a call. Accordingly, she decided to take the patient to the restroom so the patient would not lose her place in the treatment line. Lang said she asked the patient how many people usually helped her to the bathroom. The patient replied that only one person usually assisted her, and Lang stated that she believed the patient was being truthful.
 

 ¶ 5. Lang took the patient to the restroom and was assisting the patient in undressing when the patient lost her balance and fell onto Lang’s shoulder. Lang said she heard her back pop after the patient landed on her. Lang testified that at first she did not realize that.she had been injured because she felt no immediate pain. However, she did fill out a report regarding the injury and noted that her back had popped when the patient landed on her shoulder.
 
 [1]
 

 ¶ 6. After the 2002 accident, Lang eventually experienced lower-back pain from the initial shoulder injury. She was seen by Dr. John Neill
 
 [2]
 
 who tried conservative treatment, removing her from work for several days and giving her pain medication. Dr. Neill testified that Lang had leg and back pain which could have been caused by the work accident. In Dr. Neill’s deposition, he stated: “I think that her statements that she was lifting a 300-pound patient and had back pain develop after that with radiation into her legs, I think it is perfectly reasonable and true to say that an event like that could precipitate [her injuries].”
 

 ¶ 7. Receiving no relief, Lang was referred to another doctor who gave her three steroid pain injections. When the injections did not relieve her pain, she was referred to Dr. Rahul Vohra in March 2003. Dr. Vohra, a physician who specializes in physical medicine and rehabilitation, diagnosed Lang’s pain as originating from lumbar spasms with a decreased lumbar range of motion, tenderness over her sacroiliac joints, and some age-related spondylosis. He placed her on medication and ordered her to participate in physical therapy, which she did. Dr. Vohra contin
 
 *817
 
 ued to treat her once every three months for pain-medication management. A functional-capacity evaluation was. performed on Lang, which Dr. Vohra testified showed that she needed to be restricted to sedentary light duty work. Dr. Vohra testified that light duty meant she could lift only up to twenty pounds, could kneel frequently, could crouch occasionally, and would be able to sit and stand for up to thirty minutes at a time. He said she reached maximum medical improvement on July 28, 2003, and he assigned a 5% permanent partial medical impairment to the body as a whole. Other medical proof came from a pain-management anesthesiologist who testified by affidavit that upon examination, he diagnosed Lang with bilateral rad-icular pain, but since Lang had received several steroid injections with little success, he did not perform any more injections. At the time of the hearing before the Commission in January 2007, Lang was still being treated by Dr. Vohra every month for pain management, and she was taking a variety of medications.
 

 ¶ 8. The testimony conflicted regarding Lang’s attempt to regain her former job. Lang testified that after reaching maximum medical improvement, she went back to Baptist in the summer of 2003 and interviewed with her former supervisor, Libby Lampley, who knew Lang for most of her working years. Lang testified that Lampley reviewed her restrictions and told her that Baptist did not have any employment for her at that time. Lang said she never heard from Baptist again. However, Lampley testified that when Lang was interviewed, Lampley reviewed Lang’s restrictions and made her the offer of her former job at the same salary, stating that Baptist would “be glad to work with her in any way [it] could” regarding her restrictions of sitting and standing. However, Lampley stated that Lang turned down the offer. The net result of both testimonies is that Lampley offered Lang her job back at Baptist with modifications included for Lang’s injuries, but Lang declined the offer because she could not sit or stand for any length of time without discomfort.
 

 ¶ 9. A vocational rehabilitation professional, Jennifer Oubre, was hired by the employer and carrier to assist Lang in finding employment. Oubre testified regarding her job-search efforts on behalf of Lang. She stated that during a three-year period she found sixteen jobs with eight employers which fit Lang’s qualifications and restrictions. She provided this information to Lang through Lang’s attorney. It was Oubre’s opinion that Lang had not made a reasonable effort to find employment. However, it was Lang’s testimony that she applied for every job that Oubre had referred to her. Lang said she had one job offer from the University of Mississippi Medical Center for a full-time LPN, but after she told the employer of her restrictions, the offer was withdrawn. On cross-examination, Oubre admitted that in formulating her opinion about Lang’s lacking job-search efforts, she did not take into account approximately fifty jobs which Lang had applied for on her own without the assistance of Oubre.
 

 ¶ 10. The AJ found that Lang had incurred a compensable work-related injury as a result of the January 31, 2002, incident. Further, the AJ ruled Lang had suffered a 50% loss of wage-earning capacity and awarded indemnity and medical benefits. The AJ ordered the employer and carrier to pay temporary total disability benefits in the amount of $322.90 per week commencing on January 31, 2002, until July 28, 2003, and permanent partial disability benefits in the amount of $213.68 per week beginning July 23, 2003, and concluding after the statutory maximum of 450 weeks. The employer and carrier
 
 *818
 
 were given credit for all the wages and benefits already paid to Lang.
 

 ¶ 11. The employer and carrier appealed to the Commission, which upheld the AJ’s finding of'compensability for the injury, as well as the award of temporary total disability benefits and payment for the medical treatment. However, the Commission reduced Lang’s loss of wage-earning capacity from the AJ’s determination of 50% to 20% after finding that Lang’s job-search efforts were “limited in both time and in scope.” However, the Commission recognized that as a result of the injury, Lang had lost some of the functions necessary “to carry out 100% of her previous duties as an LPN.” Further, the Commission credited Lang’s twenty-three years of employment as an LPN with Baptist and noted that she continues to suffer from chronic pain for which she takes medications that have a sedating effect. The Commission reduced the amount of the benefit and ordered the employer and carrier to pay permanent partial disability benefits in the amount of $85.47 per week beginning on July 29, 2003, and continuing for 450 weeks. In the meantime, Lang began receiving social-security disability benefits.
 

 ¶ 12. After the circuit court upheld the Commission’s decision, both Lang and the employer and carrier appealed to the Mississippi Supreme Court which deflected the appeal to this Court.
 

 I.Lang’s Appeal
 

 ¶ 13. Lang raises three issues on appeal:
 

 1. Whether the Commission’s decision is contrary to law and against the overwhelming weight of the evidence.
 

 2. Whether the Commission erred in failing to award disability benefits and in failing to affirm the AJ’s order.
 

 3.Whether the Commission’s decision is against the intent and purpose of the Workers’ Compensation Act inasmuch as it ignores the liberal construction in favor of compensation.
 

 II. The Employer and Carrier’s Cross-Appeal
 

 ¶ 14. The employer and carrier raise two issues on cross-appeal:
 

 1. Whether the claimant made reasonable attempts at employment following her reaching maximum medical improvement.
 

 2. Whether the claimant’s condition is related to a work-related injury.
 

 STANDARD OF REVIEW
 

 ¶ 15. Our analysis begins by noting our limited standard of review in workers’ compensation appeals. The Commission is the fact-finder in a workers’ compensation case.
 
 Lott v. Hudspeth Ctr.,
 
 26 So.3d 1044, 1048 (¶ 12) (Miss.2010). An appellate court will overturn the Commission’s decision only for an error of law or an unsupported finding of fact.
 
 Total Transp., Inc. of Miss. v. Shores,
 
 968 So.2d 400, 403-04 (¶ 15) (Miss.2007). Reversal is proper only when a Commission’s decision is not based on substantial evidence, or it is based on an erroneous application of the law.
 
 Smith v. Jackson Constr. Co.,
 
 607 So.2d 1119, 1124 (Miss.1992). Our duty on appeal is to determine if there is a quantum of credible evidence that supports the Commission’s decision.
 
 Id.
 
 However, “[we] will reverse when the findings of the Commission are based on a mere scintilla of evidence that goes against the overwhelming weight of evidence.”
 
 DiGrazia v. Park Place Entm’t,
 
 914 So.2d 1232, 1236 (¶ 8) (Miss.Ct.App.2005) (citing
 
 Johnson v.
 
 
 *819
 

 Ferguson,
 
 435 So.2d 1191, 1194-95 (Miss.1983)).
 

 DISCUSSION
 

 I. Wage-Earning Capacity
 

 ¶ 16. The crux of Lang’s appeal is that the AJ was correct when she found that Lang had sustained a 50% loss of wage-earning capacity as a result of the injury and that the Commission erred by lowering the loss of wage-earning capacity to 20%. Lang argues the Commission indiscriminately created the 20% figure and had no basis for making such an award. Lang argues the jobs that Oubre, the vocational therapist, presented to Lang averaged $7.48 an hour or roughly $300 per forty-hour work week. Lang argues that roughly $300 per week represents a loss in her wages of more than 50%-53.3%, to be exact. Lang further argues that Oubre failed to find any jobs for Lang which were anywhere near the $12.82 per-hour wage or 20% loss of wage-earning capacity to which the Commission found she was entitled. Lang testified that she applied for all of the jobs presented to her by Oubre, but she was not hired for any of them. The only authority Lang cites in support of her position are cases for the general proposition that doubtful workers’ compensation cases should be resolved in favor of compensation to satisfy the beneficial and remedial purpose of the workers’ compensation law.
 
 See, e.g., Big “2” Engine Rebuilders v. Freeman,
 
 379 So.2d 888, 889-890 (Miss.1980).
 

 ¶ 17. The employer and carrier on cross-appeal claim it was error for the Commission to award Lang permanent partial benefits because it found she had failed to make reasonable efforts to find employment following her release at maximum medical improvement. Since Lang’s issue and the employer and carrier’s issue are interrelated, we will address them together.
 

 ¶ 18. Disability, for purposes of workers’ compensation cases, is defined as “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and extent thereof must be supported by medical findings.” Miss.Code Ann. § 71-3-3® (Rev. 2000). The Commission’s determination of disability involves a finding of fact; thus, the appellate court uses the “substantial evidence” standard of review.
 
 Ga. Pae. Corp. v. Taplin,
 
 586 So.2d 823, 828 (Miss. 1991). “A conclusion that the employee is disabled rests on a finding that the claimant could not obtain work in similar or other jobs and that the claimant’s unem-ployability was due to the injury in question.”
 
 Id.
 
 (citing V. Dunn, Mississippi Workmen’s Compensation § 72.1 (3d ed.1982)). The claimant has the burden of proof to make out a prima facie case of disability by showing she made a reasonable effort to find other employment.
 
 Id.
 
 When this is done, the focus shifts to the question of whether the effort was reasonable under the prevailing circumstances.
 
 Id.
 
 The employer then assumes the burden to rebut or refute the claimant’s evidence by proving that the claimant’s job-search efforts were a “mere sham or [an] unreasonable effort.”
 
 Id.
 

 ¶ 19. Thus, the claimant must show there has been a diminishment in her wage-earning capacity.
 
 Lott,
 
 26 So.3d at 1049 (¶ 16). From the earliest interpretations of workers’ compensation law, the supreme court has avoided the comparison of actual earnings before the injury to post-injury earnings as a means to determine wage-earning capacity.
 
 Karr v. Armstrong Tire & Rubber Co.,
 
 216 Miss. 132, 137, 61 So.2d 789, 791 (1953). “Our statute does not test the earning
 
 *820
 
 capacity by the comparative wages received by [an] applicant before and after the injury. It is not a comparison of actual wage with actual wage.”
 
 Id.
 
 Instead the amount of the benefit is figui-ed on a percentage of the claimant’s weekly wages at the time of the injury as compared to her wage-earning capacity in similar or other jobs thereafter.
 
 Id.
 
 In determining the “reasonableness” of a claimant’s efforts in seeking employment, the following are considered: “job availability, economics of the community, the claimant’s skills and background, and the nature of the disability.”
 
 Lott,
 
 26 So.3d at 1049 (¶ 15). Said another way, the factors which are considered in determining loss of wage-earning capacity include “the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.”
 
 McGowan v. Orleans Furniture Inc.,
 
 586 So.2d 163, 167 (Miss.1991). “In other words, the determination should be made only after considering the evidence as a whole.”
 
 Id.
 
 With these principles in mind, we turn to the facts of Lang’s appeal.
 

 ¶ 20. The Commission found that Lang’s job-search efforts were limited, but it decided in her favor based upon the extent that the on-the-job injury had on her wage-earning capacity. The Commission said that Lang could no longer expect to earn her pre-injury wage of $641 per week because the pre-injury wage resulted from the fact that she was a twenty-three-year employee of Baptist. The Commission noted the difficulty Lang would have in obtaining employment “starting anew in the labor market at her age, with a GED and an LPN license, and [with the] restrictions which limit her to light[-]duty [work].”
 

 ¶ 21. As to the requirement of continuing pain, the Commission said Lang’s testimony provided credibility that she continues to suffer with chronic back pain, for which she takes pain medication that often has a sedating effect. The Commission took notice of the fact that Lang had rejected her old job when it was offered to her in the summer of 2003 at the same pay and with the employer willing to make accommodations. Lang’s former supervisor, Lampley, testified that she told Lang, after reviewing her restrictions, that Baptist would accommodate those restrictions when required and that Lang would be rehired at her former pay. However, Lang told Lampley she did not think she was physically able to do her old job. The Commission found that Lang had testified “credibly” that her condition at the time prevented her from assuming her old job duties. Lang said, at that time, her pain was not under control, and she had extreme difficulty walking through the hallways or sitting or standing for any length of time. Lampley, who had testified earlier that she had known Lang for some time and that Lang was a quality LPN, testified that she observed that Lang was uncomfortable sitting and standing.
 

 ¶ 22. Lang made an effort to find other employment. The record shows she applied with twenty-four employers for thirty jobs, and she was registered with the job-seeker services of the Mississippi Department of Employment Security, but she had no success. While Lang made some effort to find other employment, the Commission, as the fact-finder, found that her efforts were insufficient to warrant a 50% loss of wage-earning capacity and reduced the figure to 20%. The Commission, thus, cut the amount of the benefit and ordered that Lang be paid permanent partial disability benefits in the amount of $85.47 per week from July 29, 2003, and continuing for a period of 450 weeks. The Commission
 
 *821
 
 applied the factors of wage-earning capacity by reviewing Lang’s education and training as an LPN and her inability to work and be hired elsewhere and noted that she had continuing pain which required her to take strong pain medications, which had a sedating effect upon her. When the Commission considered this evidence as a whole, it found only a 20% diminishment in wage-earning capacity. We find the Commission’s decision on this issue is supported by substantial evidence and that the Commission correctly applied the law. Therefore, we find no error regarding this issue on direct or cross-appeal.
 

 II. Work-Related Injury
 

 ¶ 23. Lang’s and the employer and carrier’s other arguments are essentially the same and ask us to determine if there was substantial evidence to support the finding that Lang had suffered an on-the-job injury. The employer and carrier claim Lang failed to prove that her injury was the result of the patient falling on her and causing her back to pop. We find this argument without merit.
 

 ¶ 24. Workers’ compensation benefits shall be payable for a disability from an injury “arising out of and in the course of employment, without regard to fault as to the cause of the injury.” Miss.Code Ann. § 71-3-7 (Rev.2000). For the disability to be compensable, it must arise out of and in the course of employment. Miss.Code Ann. § 71-3-3(b) (Rev.2000). Thus, we must determine if substantial evidence supports a finding that Lang’s claimed disability is work-related. The supreme court stated:
 

 The words ... used in the statute: “arising out of and in the course of’ have been held to present an inquiry whether the risk which has given rise to the injury is “reasonably incident to the employment,” not whether the work was the proximate cause of the injury. The injury arises out of and in the course of the employment if the employment aggravates, accelerates, or contributes to the disability as opposed to being the sole or principal cause.
 

 Fought v. Stuart C. Irby Co.,
 
 523 So.2d 314, 318 (Miss.1988) (internal citations omitted).
 

 ¶ 25. The evidence shows that Lang heard her back pop after a patient fell on her shoulder while she was assisting the patient to use the restroom. Although she did not immediately experience pain, she did realize the seriousness of the blow and filed an incident report with her supervisor. Gradually, she began experiencing back and leg pain. She returned to Dr. Neill, the neurosurgeon who had performed a previous back surgery on her in 2001. He prescribed rest and pain medications, which did not help. She was then referred to Dr. Vohra, another pain-management specialist, who diagnosed her with lumbar spasms and a decreased lumbar range of motion. He had her perform a functional-capacity test, which showed she should restrict her work to sedentary light-duty work. Dr. Neill was asked by the attorney for the employer and carrier if he could make a causal relationship between Lang’s injuries and the incident wherein a patient had landed on Lang’s shoulder. Dr. Neill replied:
 

 I don’t know and have no way to say that it’s not related to her injury in January. I can only take what the patient says as to how this all started. She certainly has a degenerative disk and other reasons she could have back pain, and they are playing a part in this. But is her disabling problem, was it triggered by this injury in January? She says it was. I don’t have any way to dispute that.
 

 
 *822
 
 ¶ 26. On cross-examination, Dr. Neill was asked within a reasonable degree of medical probability if he would concur with the association of the event and the onset of Lang’s symptoms. He replied:
 

 I have no reason on the basis of my history and exam to dispute anything that she says. Was there an event that occurred at work? Only Ms. Lang knows. I don’t know. But I have nothing — I can’t sit here and say this didn’t happen. And an event like that, with her back, with her degenerative disk disease and other changes, could certainly precipitate a pain like this.
 

 ¶ 27. Dr. Vohra treated her for months with physical therapy and pain-medication management and was still managing her pain at the time of the hearing before the Commission in January 2007.
 

 ¶ 28. Dr. Vohra was questioned by Lang’s counsel as follows:
 

 Q. Dr. Vohra, was the history obtained by you from Ms. Lang and the injury mechanism consistent with your diagnosis?
 

 A. Yes, sir.
 

 Q. Based upon the history and the injury of mechanism, would you state that your diagnosis was caused or aggravated or accelerated by the lifting incident within a reasonable degree of medical probability?
 

 A. Based on the history, yes, sir.
 

 A claimant does not have to prove with absolute medical certainty that her work-related injuries were the cause of her disability. The medical evidence is sufficient if it supports, even if it does not fully prove, a finding of disability. The Mississippi Supreme Court has held that “disability need not be proved by medical testimony as long as there is medical testimony which will support a finding of disability.”
 
 Hall of Miss., Inc. v. Green,
 
 467 So.2d 935, 938 (Miss.1985).
 

 ¶ 29. A medical doctor will rarely, if ever, be able to confirm as a witness that an on-the-job injury happened to a claimant in the manner the claimant states. The doctor will not be present at the time of injury. Instead what the doctor’s testimony does is confirm that the injury, which he has diagnosed the patient with, is consistent with the trauma the patient has described to the physician.
 

 ¶ 30. Both of Lang’s doctors testified that Lang’s injuries were consistent with the injury she described wherein the patient fell onto her shoulder, her back popped, and pain occurred afterwards in her hip, leg, and back. The employer and carrier offered no medical testimony to prove otherwise. Therefore, we find substantial support for the Commission’s decision that Lang suffered an accident on the job which caused her to have a compensa-ble disability. Thus, there is no merit to this assignment of error.
 

 ¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED ON DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT/CROSS-APPELLEE AND ONE-HALF TO THE APPELLEES/CROSS-APPELLANTS.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The employer lost this documented report. Lang completed another copy relaying how she suffered leg and back injuries after the patient fell on her shoulder. The employer and carrier investigated and accepted the claim as compensable and paid temporary disability benefits from May 13, 2002, to February 24, 2004. Lang's medical treatment bills were also paid by the carrier.
 

 [2]
 

 . In the AJ's decision portion of her Summary and Evaluation of Relevant Evidence, the AJ states that after the injuty from the falling patient, Lang "underwent surgery by the esteemed neurosurgeon, John Chalmers Neill.” This is an erroneous statement of fact. Dr. Neill performed a previous back surgery on Lang in June 2001, several months before she suffered the on-the-job injury that is at issue in this case. Lang stated that the back surgery was not related to her work and that she was released to go back to work without restrictions. She testified that she had no problems doing her job until the subject accident, when the patient fell on her. The testimony of Lang and Dr. Neill was that she sought his help with the injury at issue and that he tried conservative treatment by removing her from work and giving her pain medication, which proved unsuccessful. The Commission did not directly correct the factual error of the AJ, but instead, the Commission described Lang’s treatment in a way that corrected the error. The Commission stated in part: "The Claimant in this matter sustained a compensable back injury on or about January 31, 2002.... She was treated by Dr. John Neill, Dr. Rahul Vohra, and others, and was placed at maximum medical improvement by Dr. Vohra on July 28, 2003[,] with a 5% function impairment rating.” While Lang was treated by Dr. Neill for the injury in question, he did not perform surgery as a result of the injury in question, and the Commission’s decision corrects the earlier misstatement of facts by the AJ.