ROBERTS, J.,
for the Court:
¶ 1. In October 2005, Beverly Butler was employed by Dollar General when she injured her back and right shoulder moving boxes at work. Butler sought medical treatment for her injury.[1] She received treatment and was placed at maximum medical improvement (MMI) on June 19, 2006. Almost a year later, Butler sought additional medical treatment, without approval from Dollar General or the Mississippi Workers’ Compensation Commission (Commission). She filed a petition to controvert on April 19, 2007, to cover her medical expenses from several doctors’ visits and medical procedures. Dollar General disputed that she was entitled to coverage, because the doctors and medical procedures had not been approved. On April 23, 2010, a Commission administrative judge (AJ) entered an order in favor of Dollar General. Butler appealed this decision to the Pike County Circuit Court. The circuit court entered an order on May 13, 2011, affirming the Commission’s order. Butler executed the current appeal.
FACTS AND PROCEDURAL HISTORY
¶ 2. On October 16, 2005, Butler was working at Dollar General in McComb, Mississippi, when she injured her back and right shoulder while unloading boxes of merchandise off a conveyor belt. She informed her manager of her injury and was permitted to leave work early that day. She was off work for approximately a week due to pain. When she returned to work, Butler continued experiencing pain, and her manager allowed her to leave work again. She asked her manager about going to the emergency room. After seeking permission from Dollar General, the manager informed her that she could go to the emergency room. Butler sought treatment for her injury at the Southwest Mississippi Regional Medical Center’s emergency room on October 28, 2005. After taking an x-ray, the emergency room doctor discharged Butler with a sling for her right arm, prescriptions for pain medicine and a muscle relaxer, and a permission slip to miss work.
¶ 3. Apparently still in pain, Butler asked her manager for permission to seek a second opinion. She signed a choice of physician form selecting Dr. Michael Patterson at the Southern Bone and Joint Specialists as her choice of treating physician. Dr. Patterson took an MRI of Butler’s right shoulder and lower back. He also prescribed a physical-therapy plan for *329 her back as well as anti-inflammatory medicine. Lastly, he stated that she should be kept off work until her pain became more reasonable. According to Dr. Patterson, the MRI did not show evidence of a tear in Butler’s rotator cuff, but there was an “abnormal signal in the rota-tor cuff suggesting tendinopathy.” Also, there was “[d]egenerative joint disease in the acromioclavicular joint.” The MRI also showed Butler had a mild bulging disc and degenerative disc disease in her back. Dr. Patterson referred Butler to Dr. Douglas Rouse for her shoulder treatment. Dr. Rouse saw Butler on February 28, 2006, and gave her an injection in her shoulder and ordered physical therapy. Butler underwent a Functional Capacity Evaluation on May 4, 2006, and it was determined that she had a zero percent whole body impairment rating. Dr. Patterson and Dr. Rouse released Butler from their care and placed her at MMI on June 19, 2006.
¶ 4. Butler claimed she attempted to return to work, but due to her pain, she could not. Butler did not seek any further medical treatment for her injury or pain until April 2007 when she, without a referral from Dr. Patterson, permission from Dollar General, or permission from the Commission, sought treatment from Dr. Stephen Reiser at University Orthopaedic Associates on April 16, 2007. She filed a petition to controvert on April 19, 2007, seeking to have Dollar General cover the costs of these medical visits and treatments as well as additional temporary total disability money. Dollar General had issued its notice of final payment on February 28, 2007, but Butler refused to sign the document. It was filed with the Commission on April 26, 2007. Then, on May 9, 2007, Dollar General filed its answer to Butler’s petition to controvert denying liability to cover these treatments. Butler continued seeing Dr. Reiser. On May 7, 2007, Dr. Reiser noted that Butler was not interested in resuming physical therapy. He also wrote that she should consider seeing a specialist for an injection or other treatment, but he did “not believe that there [was] anything that would be of benefit for her from a surgical prospective.” Butler again visited Dr. Reiser on June 25, 2007, where he again noted that Butler was not interested in resuming physical therapy or having another injection.
¶ 5. Butler then sought the medical treatment of Dr. William Geissler on September 24, 2007. Dr. Geissler noted that Butler was “quite desirous of surgical intervention.” She then saw Dr. Ashraf Ra-gab on October 10, 2007, for her back pain. On the same day, she saw Dr. Geissler to discuss her surgery options. Two days later, Dr. Geissler conducted arthroscopic surgery on Butler’s right shoulder. Butler continued to experience pain resulting from her injury even after her surgery.
¶ 6. Dollar General filed a notice of controversion on December 10, 2007, disputing Butler’s unauthorized medical treatments. Per Dollar General’s request, Butler was seen by Dr. Rahul Vohra at NewSouth NeuroSpine on July 11, 2008. Dr. Vohra reviewed both the authorized and unauthorized medical records relating to Butler’s injury and treatment. He also performed a physical examination on Butler. Dr. Vohra could not discern any abnormalities to explain Butler’s pain complaints. He also concluded that Butler had reached MMI for her back on June 19, 2006. On her own volition, Butler sought medical treatment for pain management from Dr. Robert Strong. Dr. Strong prescribed her pain medication.
¶ 7. Shortly thereafter, Dollar General filed a motion for determination regarding medical treatment and expenses. The AJ held a hearing on April 20, 2009, and is *330 sued an order on May 7, 2009, finding that Dollar General was not responsible for Butler’s further medical treatment. Dollar General then filed a motion to dismiss for failure to prosecute and, per the AJ’s August 27, 2009 order, Butler had ten days to file a completed prehearing statement. Butler timely filed the statement. For the first time, Butler filed a motion for payment of medical treatment and approval of medical providers. A hearing was held before an AJ on November 30, 2009, where Butler, represented by counsel, testified on her own behalf about her injuries and subsequent medical treatments. The AJ issued an order on April 23, 2010, finding that Butler was not entitled to additional treatment or additional temporary total disability benefits. Butler appealed this decision to the Commission, and the Commission affirmed the AJ’s decision.
¶ 8. Butler then appealed to the circuit court on January 13, 2011. She filed a motion for additional time on March 17, 2011, and was granted an additional forty days to file her brief. Forty days later, Butler had not filed her brief. Then, on May 11, 2011, the Pike County Circuit Clerk notified Butler that she had not filed her brief pursuant to Mississippi Rule of Appellate Procedure 31(b). On the same day, Butler filed for additional time to file her brief, and the circuit judge signed an order granting Butler additional time, but the order was not filed with the circuit court until June 16, 2011. Two days later, on May 13, 2011, the circuit court entered an order affirming the Commission’s decision.
¶ 9. Butler appeals the circuit court’s decision, and she argues that the circuit court erred in affirming the Commission’s decision because the decision was not based on the findings of her current treating physicians. She also claims that her due-process rights were violated because:
(1) the [circuit cjourt ruled upon the appeal during the enlarged time that the [circuit cjourt granted [her] to file [her brief]; (2) the [circuit e]ourt rule[d] upon the appeal without [the] benefit of [her brief;] (3) the [circuit e]ourt ruled upon the appeal without any opportunity for oral argument^] and (4) the [circuit c]ourt ruled upon the appeal without any record of [the] proceedings in open court.
STANDARD OF REVIEW
¶ 10. When reviewing decisions by the Commission, our standard of review is limited. Lang v. Miss. Baptist Med. Ctr., 53 So.3d 814, 818 (¶ 15) (Miss.Ct.App.2010). As the Commission is the ultimate fact-finder in workers’ compensation cases, we will only overturn the Commission’s findings if they are not based on substantial evidence, or if the Commission erroneously applied the law. Id. (citations omitted). This Court “will reverse when the findings of the Commission are based on a mere scintilla of evidence that goes against the overwhelming weight of evidence.” DiGrazia v. Park Place Entm’t, 914 So.2d 1232, 1236 (¶ 8) (Miss.Ct.App.2005) (citing Johnson v. Ferguson, 435 So.2d 1191, 1194-95 (Miss.1983)). A de novo review is conducted when reviewing questions of law. James v. Bowater Newsprint, 983 So.2d 355, 358 (¶ 11) (Miss.Ct.App.2008).
ANALYSIS
I. COMMISSION’S DECISION
If 11. Butler argues that the circuit court erred in affirming the Commission’s finding that she achieved MMI in June 2006 and that she was not entitled to any additional benefits or payment for medical treatments after that date. Butler claims that none of the doctors she visited released her to return to work except for Dr. Patterson and Dr. Rouse; therefore, *331 whether she has achieved MMI is still in dispute.
¶ 12. Mississippi Code Annotated section 71-3-15(1) (Supp.2012) provides that “[t]he employer shall furnish such medical, surgical, and other attendance or treatment ... for such period as the nature of the injury or the process of recovery may require.” (Emphasis added). In Cuevas v. Copa Casino, 828 So.2d 851, 856 (¶ 15) (Miss.Ct.App.2002), Karen Cuevas claimed that there was a causal connection between her fall at work and the medical problems in her neck. Cuevas sought treatment from unauthorized doctors who were not able to review the accident report and examinations made by prior doctors. Id. at 857 (¶ 17). The unauthorized doctors treated her injury based solely on what she told them had happened. Id. This Court held “there [was] substantial medical evidence to support the findings of the [AJ] and the [Commission]. The only medical evidence causally connecting Cue-vas’s fall to any problems she might have had comes from doctors who Cuevas saw without permission or notification of [her employer].” Id. at (¶ 19). Where there is conflicting medical testimony, it is the Commission that has the responsibility to apply its expertise and determine which evidence is more credible. Washington v. Woodland Village Nursing Home, 25 So.3d 341, 355 (¶ 33) (Miss.Ct.App.2009) (citing Wesson v. Fred’s Inc., 811 So.2d 464, 469 (¶ 23) (Miss.Ct.App.2002)). Further, “[w]here medical expert testimony is concerned, this Court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission[’s decision] whether the award is for or against the claimant.” Id. (citing Raytheon Aero. Support Servs. v. Miller, 861 So.2d 330, 336 (¶ 13) (Miss.2003)).
¶ 13. Butler disagrees with Dr. Patterson’s finding that she achieved MMI in June 2006 and argues that she has not achieved MMI yet. She presented her medical records from the unauthorized doctors to show that those medical treatments were necessary and reasonable, thus requiring coverage. This case is similar to Cuevas in that the unauthorized doctors did not have the benefit of reviewing Dr. Patterson’s and Dr. Rouse’s medical records before providing treatment. They relied on Butler’s explanation of the events when forming their opinions. Since this issue involves conflicting medical evidence, we defer to the Commission on determining the credibility of the evidence presented and making its ultimate finding. When deciding that Butler was not entitled to further benefits, the AJ, and subsequently the Commission, found Dr. Patterson’s finding that Butler had reached MMI and did not require any further treatment to be more credible. Additionally, Dr. Vohra, who reviewed all the doctors’ records, found that MMI was achieved in June 2006. Therefore, we find that there was substantial evidence to support the Commission’s finding that Butler achieved MMI in June 2006.
¶ 14. Butler’s remaining argument involves the validity of the choice-of-physician form she signed. On February 2, 2006, Butler signed the form and indicated that she selected Dr. Patterson to render treatment. The form clearly explained that she had the right to chose her own physician, and she exercised that right by personally selecting Dr. Patterson. It also explained that any referrals to other doctors must be made by her chosen physician and that Dollar General “must approve any physician change[.]” Changing doctors without authorization would make Butler “responsible for the unauthorized treatment.” Butler argues that the form she signed was not valid because no one explained the form to her; she only has a *332 GED; she was unrepresented by counsel; and she was in need of medical care at the time she signed the form.
¶ 15. Section 71-3-15(1) grants an injured employee the right to either accept the recommendation of physician offered by the employer, or “to select one (1) competent physician of his choosing and such other specialists to whom he is referred by his chosen physician to administer medical treatment. Referrals by the chosen physician shall be limited to one (1) physician within a specialty or subspecialty area.” Further, “any additional selection of physicians by the injured employee or further referrals must be approved by the employer, if self-insured, or the carrier prior to obtaining the services of the physician at the expense of the employer or carrier” Id. (emphasis added). In Con-gleton v. Shellfish Culture, Inc., 807 So.2d 492, 496-97 (¶ 14) (Miss.Ct.App.2002), Paul Congleton claimed that it was error to deny compensation for his medical treatment from three unauthorized doctors. He alleged that “he was entitled to a choice of physician besides the one recommended by his employers[.]” Id. at 496 (¶ 14). Relying on section 71-3-15(1), this Court held that Congleton was not entitled to coverage because he was required to get prior approval by his employer or his employer’s insurance carrier before seeking medical treatment by a physician not originally authorized. Congleton, 807 So.2d at 497 (¶ 16).
¶ 16. The record is clear that Butler chose Dr. Patterson as her physician. At the hearing before the AJ, she agreed that she had signed the choice-of-physician form. Butler claimed she did not know what she was signing at the time; however, she had been deposed prior to the hearing where she admitted she had read and understood the document. Additionally, Butler’s claim of ignorance of the relevant workers’ compensation laws is belied because she made two requests through Dollar General to see doctors. The first was her request to' go to the emergency room; the second was her request for a second opinion where she chose to see Dr. Patterson. She was aware both times she needed to obtain her employer’s permission before seeking medical treatment. Based on the evidence in the record, we find that the Commission’s decision was based on substantial evidence.
¶ 17. This issue is without merit.
II. DUE PROCESS
¶ 18. Butler alleges that her due-process rights were violated because she did not receive notice that the circuit court would rule on the case before briefs were submitted, and because she had no opportunity to be heard either by brief or oral argument. According to Butler, on May 11, 2011, she filed a motion to request additional time to file her brief. The circuit judge signed an order the same day granting her sixty days; however, the order was not filed until over a month later on June 16, 2011. The circuit court entered an order two days later affirming the Commission’s decision on the merits. Butler submits that because she was granted an additional sixty days to file her brief, the circuit court erred in ruling on the appeal before the sixty days expired. In the alternative, she alleges that under Mississippi Rule of Appellate Procedure 2(a)(2), she was entitled to fourteen days from the date she received written notice of the deficiency to correct the deficiency of failing to file a brief.
¶ 19. Butler’s argument fails for several reasons. First, Butler argues that she was granted an additional sixty days to file a brief. Butler’s notice of appeal from the circuit court to this Court was filed on June 9, 2011. The order granting her an *333 additional sixty days to file her brief was not filed until several days later on June 16, 2011. It is well settled that “once an appeal from the trial court is perfected, the case is ipso facto removed to the appellate court.” In re Estate of Moreland, 537 So.2d 1345, 1346 (Miss.1989) (citations omitted). Filing a notice of appeal transfers jurisdiction from the trial court to an appellate court; therefore, the order granting Butler an additional sixty days to file a brief is not properly before this Court, as it was filed after Butler filed her notice of appeal.
¶ 20. Butler also argues that she was entitled to fourteen days to correct her deficiency before the circuit court could rule on the case pursuant to Rule 2(a)(2). The Mississippi Rules of Appellate Procedure are applicable because when the circuit court sits as an appellate court in reviewing the final order of the Commission, “Uniform Circuit and County Court Rule 5.06 directs us to the Mississippi Rules of Appellate Procedure for instructions on how we are to procedurally examine this case[.]” Zurich Am. Ins. Co. of Ill. v. Beasley Contracting Co., 779 So.2d 1132, 1134 (¶ 8) (Miss.Ct.App.2000). Rule 2(a)(2) provides the following:
An appeal may be dismissed upon motion of a party or on motion of the appropriate appellate court (i) when the court determines that there is an obvious failure to prosecute an appeal; or (ii) when a party fails to comply substantially with these rules. When either court, on its own motion or on motion of a party, determines that dismissal may be warranted under [this Rule 2(a)(2), the clerk ... shall give written notice to the party in default, apprising the party of the nature of the deficiency. If the party in default fails to correct the deficiency within fourteen (14) days after notification, the appeal shall be dismissed by the clerk.... The attorney for the party in default has the burden to correct promptly any deficiency or to see that the default is corrected by the appropriate official. Motions for additional time in which to file briefs will not be entertained after the notice of deficiency has issued.
Rule 2(a)(2) provides notice to a defaulting party and time to correct the deficiency before the clerk dismisses the case. The circuit court ruled upon this case on the merits. Rule 2(a)(2) does not state that the circuit court must wait fourteen days before deciding the case on the merits; it simply states that the defaulting party must correct any deficiencies within fourteen days to avoid dismissal by the clerk. Additionally, even if Butler was entitled to fourteen days under Rule 2(a)(2), she failed to file a brief within fourteen days after she received notice.
¶21. Lastly, in Zurich, 779 So.2d at 1135-36 (¶¶ 12-18), this Court found that although Zurich American Insurance failed to file its brief within the appropriate time, the matter was given full consideration because the circuit court reviewed the Commission’s decision and the full record before affirming the Commission’s decision. Similarly, the circuit court in the present ease considered the record before it and the Commission’s decision before affirming the Commission’s decision. Butler received full consideration of the matter even though she failed to timely file her brief.
¶ 22. For these reasons, this issue is without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANT.
*334 LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES AND RUSSELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Dolgencorp LLC operates as a subsidiary of Dollar General Corporation.